UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUANITA SCOTT,

    Plaintiff,

    v.

DISTRICT OF COLUMBIA, et al.

    Defendants.

Civil Action No. 03-1672
DAR

<u>**MEMORANDUM OPINION**</u>

    Pending for consideration by the undersigned United States Magistrate Judge are

Plaintiff's Motion for Summary Judgment (Docket No. 31) and Defendants' Cross Motion for

Summary Judgment (Docket No. 33).  Plaintiff, on behalf of her child, J.B., claims that she is

entitled to declaratory and injunctive relief for Defendants' (1) failure to provide a free

appropriate public education for J.B.; (2) failure to "assess or evaluate" J.B. for "special

education services"; and (3) failure to develop an IEP for J.B. during the 2001-02 and 2002-03

school years, in violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.

§ 1400 <u>et seq.</u>, and the District of Columbia Code.  Complaint, ¶¶ 13-23.  Defendants deny these

allegations (<u>see</u> Answer,  ¶¶ 22-23), and maintain that the Hearing Officer's determination that

Plaintiff's rights were not violated is supported by a preponderance of the evidence in the record.

Upon consideration of the parties' submissions and the entire record herein, Plaintiff's Motion

for Summary Judgment will be **GRANTED**, and Defendants' Cross Motion for Summary

Judgment will be **DENIED**.

Scott v. District of Columbia, *et al.*                                                          2

## I. BACKGROUND

The named Plaintiff, Juanita Scott, is the mother of the student (hereinafter "student" or "J.B.") on whose behalf this action was brought.  Complaint, ¶ 4.  Plaintiff, in a complaint filed on September 6, 2003, contends that Defendants' conduct violated federal and District of Columbia laws governing assessment and placement of special education students.  Id., ¶ 1. When Plaintiff commenced this lawsuit in 2003, J.B. was nine years old and attended Eaton Elementary School ("Eaton").  Id., ¶¶ 4, 8.

In September, 2001, Plaintiff notified J.B.'s teacher and administrators at Eaton that J.B. was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD").  Id., ¶ 9; Administrative Record at 3. On several occasions during the 2001-02 and the 2002-03 school years, Plaintiff met with J.B.'s teachers and other Eaton staff.  Transcript at 57.  At these meetings, Plaintiff requested that Defendants evaluate J.B. for "special education services."  Id. J.B.'s third grade teacher, Lisa Frida, noted "that throughout the year the student's behavior displayed ADHD and interfered with his schoolwork."  Administrative Record at 3.  At the conclusion of third grade, in June, 2002, Eaton's guidance counselor and special education coordinator, Jeffrey Braxton, convened a Teacher Assistance Team ("TAT") meeting. Administrative Record at 2.  Present at the meeting were Mr. Braxton, Ms. Frida, and Plaintiff. Id.  At the meeting, the participants agreed to develop "alternative strategies" to address J.B.'s "attentional" problems, including placing J.B. in a smaller classroom setting, giving J.B. extra time to complete standardized tests; tutoring; and consistent administration by Plaintiff of J.B.'s ADHD medication.  Id. at 3.

J.B. continued to attend Eaton during the 2002-03 school year.  J.B.'s fourth grade

Scott v. District of Columbia, *et al.*                                                                    3

teacher, Paria Aquavan, remarked in her notes that J.B. occasionally had "uncontrollable

outbursts with speaking out of turn" and difficulties "staying focused."  Transcript at 53-54.

Additionally, she remarked that at one point during the school year, J.B. displayed "very

unmanageable behavior."  Id. at 54.

A TAT meeting was convened on June 4, 2003 to discuss medical reports of the student's

ADHD status.  Administrative Record  at 3, 19.  The meeting participants also discussed J.B.'s

"problems with staying focused."  Id. at 19.  The TAT found that J.B. was academically "on

target," but that consistent administration of his medication remained necessary for J.B. to

continue his academic progress.  Id.  Additionally, Paria Akhavan, J.B.'s fourth grade teacher,

"[recommended] summer tutoring to supplement his present academic skills."  Administrative

Record at 19.

Prior to the June, 2003 TAT meeting, Plaintiff scheduled neurological testing for J.B. at

Georgetown University Hospital.  Administrative Record at 4.  Plaintiff did not receive the report

of the testing until June 16, 2003.  Id.  The report indicated that J.B. was diagnosed as suffering

from Tourette's disorder.  Id.

On May 15, 2003, Plaintiff submitted a request for a due process hearing to address her

allegation that Defendants failed to evaluate J.B. for special education services within 120 days

of her request and failed to find J.B. a child in need of evaluations for special education.

Administrative Record at 43-46. The due process hearing took place on June 30, 2003.  The

Hearing Officer found that "DCPS has not refused to test the student, but wanted to try

alternative strategies first, which Ms. Scott agreed to doing."  Id. at 5.  Additionally, the Hearing

Officer found that DCPS did not deny J.B. a "free appropriate public education ("FAPE")," and

Scott v. District of Columbia, *et al.*                                                                4

that "the school and the parent worked together in a cooperative spirit in the best interest of the student." Id. The Hearing Officer also found that "[t]here was no evidence that DCPS had failed to comply with a request from the parent to have the student tested." Id.

The Hearing Officer dismissed the case, but ordered that a multi-disciplinary team be convened prior to the 2003-04 school year to review the Georgetown University Hospital neuropsychological report and "determine what other evaluations are necessary to determine whether the student is eligible for special education services." Administrative Record at 5. The Hearing Officer further ordered that if J.B. were deemed eligible, then an Individualized Education Program ("IEP") should be developed, and an appropriate placement should be determined. Id.

On August 6, 2003, Plaintiff filed the instant complaint and alleged that Defendants failed to provide J.B. with a FAPE (Count I); failed to timely determine J.B.'s eligibility for special education (Count II); and failed to develop an IEP for J.B. (Count III). Complaint, ¶¶ 13-23.

On August 7, 2003, Plaintiff filed a Motion for Clarification of Hearing Officer's Determination ("HOD"). Administrative Record at 7. Plaintiff, in her motion, observed that "[b]ecause the case had been dismissed, it is unclear whether any order remains in effect." Id. On August 18, 2003, the Hearing Officer issued a memorandum addressing the issues presented by Plaintiff's motion. Id. at 9-11. The Hearing Officer indicated that the case was dismissed because there was "no finding of a denial of FAPE by DCPS." Id. at 11. However, the Hearing Officer noted that "Hearing Officers have the broad authority to fashion appropriate relief" and "[t]he order to review the neuropsychological report was based on the Hearing Officer's broad authority[.]" Id. at 10-11.

Scott v. District of Columbia, *et al.*                                                    5

## II.  CONTENTIONS OF THE PARTIES

Plaintiff and Defendants cross-move pursuant to Rule 56 of the Federal Rules of Civil

Procedure for summary judgment, alleging that there are no genuine issues as to any material fact

for trial and that each is entitled to summary judgment as a matter of law.  Plaintiff, in her

Motion for Summary Judgment, maintains that DCPS never performed the special education

evaluations of her son which she first requested in June, 2001, and, as of the filing of the

complaint, failed to develop an IEP for her son.  Plaintiff's Memorandum in Support of Motion

for Summary Judgment ("Plaintiff's Memorandum").  As relief, Plaintiff requests that DCPS (1)

perform a psychiatric evaluation of J.B.; (2) perform evaluations to determine J.B.'s ADHD

status; and (3) develop an appropriate IEP for J.B. to ensure that he is provided a FAPE.  Id. at 7.

Plaintiff's motion for summary judgment is, in accordance with Local Civil Rule 7(h),

accompanied by a statement of material facts as to which she contends there is no genuine issue,

which includes references to the parts of the record on which she relies to support the statement.

Plaintiff's Statement of Material Facts Not in Dispute.

Defendants, in their cross motion for summary judgment and opposition to Plaintiff's

motion for summary judgment, submit that Plaintiff's motion should be denied because the HOD

is supported by a preponderance of evidence in the record.  Defendants' Memorandum in

Support of Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Motion for

Summary Judgment ("Defendants' Memorandum") at 4.  Additionally, Defendants maintain the

Hearing Officer did not err when he found that DCPS did not violate the student's right to a

FAPE "when it sought to abate inappropriate behaviors through the TAT."  Id.  Defendants also

Scott v. District of Columbia, *et al.*                                                    6

maintain that the Hearing Officer did not err "in concluding that [Plaintiff] was in agreement

with the alternative strategies recommended by the TAT."  Id.

      Defendants' cross motion is accompanied by a statement which conforms to the

requirements of Local Civil Rule 7(h).  See Statement of Material Facts As To Which There is

No Genuine Issue (Docket No. 33).  However, Defendants' Statement of Genuine Issues and

Response to Plaintiff's Statement of Material Facts (Docket No. 33) does not conform to the

requirements of Local Civil Rule 7(h).  Defendants, did not, as the rule requires, "[set] forth all

material facts as to which it is contended there exists a genuine issue necessary to be litigated,

which shall include references to the parts of the record relied on to support the statement."

LCvR 7(h).  Instead, Defendants listed each of the Plaintiff's statements and indicated whether

each such statement was "Disputed" or "Not disputed."  See Defendant's Statement of Genuine

Issues and Response to Plaintiff's Statement of Material Facts.  Some of the statements which are

"Disputed" are supported by citations to the record, while others are not.

      Plaintiff, in her opposition to Defendants' cross motion and reply to Defendants'

opposition (Docket No. 34), submits that Defendants do not address the merits of her claims, and

instead, focus on her cooperation with some of the "alternative strategies" which were suggested

at the TAT meetings.  Plaintiff maintains that her cooperation did not release Defendants from

their duty to evaluate J.B. for "special education services" and to develop and IEP for him.

Plaintiff's Memorandum in Reply to Defendants' Opposition and in Opposition to the

Defendants' Cross-Motion for Summary Judgment ("Plaintiff's Opposition") at 11-15.

      Plaintiff's opposition to Defendant's cross motion is accompanied by Plaintiff's

"Response to Defendants' Statement of Material Facts As To Which There is No Genuine Issue."

Scott v. District of Columbia, *et al.*                                                7

Plaintiff's Opposition at 5-10.  Plaintiff's statement does not conform to the requirements of

Local Civil Rule 7(h) because she does not set forth all material facts in genuine dispute, but

rather lists each of the Defendants' statements and indicates whether each such statement is

"Disputed" or "Not disputed."  Thus, Plaintiff's opposition to Defendants' cross motion for

summary judgment is not "accompanied by a separate concise statement of genuine issues setting

forth all material facts as to which it is contended there exists a genuine issue necessary to be

litigated."  See  LCvR 7(h).

        Defendants, in their reply to Plaintiff's opposition, submit that "there is no evidence in

the Administrative Record that shows Plaintiff completed a form requesting the student be

evaluated" and that "the record is clear that Plaintiff agreed to try alternative methods to control

the student's disruptive behavior."  Defendants' Reply to Plaintiff's Opposition to Defendants'

Cross Motion for Summary Judgment ("Defendants' Reply") (Docket No. 35) at 4.

        Neither Plaintiff  nor Defendants controverted the facts identified by the opposing side in

accordance with Local Civil Rule 7(h).  In accordance with Local Civil Rule 7(h), the

undersigned will deem both statements of material facts not in dispute as admitted.  Accordingly,

all that remains to be determined is whether either side is entitled to judgment as a matter of law.


## III. STATUTORY FRAMEWORK

        A core purpose of the IDEA is to ensure that "all children with disabilities have available

to them a free appropriate public education [FAPE] that emphasizes special education and related

services designed to meet their unique needs[.]"  20 U.S.C. § 1400(d)(1)(A).  "School districts

may not ignore disabled students' needs, nor may that await parental demands before providing

Scott v. District of Columbia, *et al.*                                                     8

special instruction."  Reid v. District of Columbia, 401 F.3d 516, 519 (D.C. Cir. 2005); see also

Branham v. District of Columbia, 427 F.3d 7, 8 (D.C. Cir. 2005).  Rather, IDEA requires that

school districts must identify, locate, and evaluate all children with disabilities who are in need

of special education and related services.  See 20 U.S.C. § 1412(a)(3)(A); Reid, 401 F.3d at 519.

      Each child with a disability is entitled to an individualized education program ("IEP")

which includes, among other provisions, "a statement of the special education and related

services and supplementary aids and services to be provided to the child[.]"  See 20 U.S.C. §

1414(d)(1)(A).  "[T]he IEP must, at a minimum, 'provid[e] personalized instruction with

sufficient support services to permit the child to benefit educationally from that instruction.'"

Reid, 401 F.3d at 519; see also Branham, 427 F.3d at 9.

      IDEA also provides that the state and local educational agencies shall ensure that parents

of each child with a disability have the opportunity to examine the child's records; participate in

meetings regarding the child's identification, evaluation and placement; and have the right to

obtain "an independent educational evaluation of the child[.]"  See 20 U.S.C. §§ 1414(f),

1415(b)(1).  Parents who object to their child's "identification, evaluation, or educational

placement" are entitled to an "impartial due process hearing," 20 U.S.C. §§ 1415(b)(6), (f)(1), at

which they have a "right to be accompanied and advised by counsel[.]"  20 U.S.C. § 1415(h)(1).

      Under District of Columbia law, a "qualified impartial Hearing Officer" conducts the due

process hearing in accordance with the IDEA.  D.C. Mun. Regs., Tit. 5, § 3030.1.  A parent who

is dissatisfied with the determination of the hearing officer may bring a civil action in either state

or federal court without regard to the amount in controversy.  20 U.S.C. § 1415(i)(2).

Scott v. District of Columbia, *et al.*                                                    9

## IV. STANDARD OF REVIEW

*A. Summary Judgment*

Summary judgment shall be granted if there is no genuine issue as to any material fact

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex

Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood 43 F. 3d 1538, 1540 (D.C. Cir.

1995).  The burden is upon the non-moving party to demonstrate that there are material facts in

dispute.  Celotex, 477 U.S. at 324.  There is a genuine issue of material fact "if the evidence is

such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986).  Material facts are in dispute if they are capable of

affecting the outcome of the suit under governing law.  Id.  In considering a motion for summary

judgment, all evidence and inferences to be drawn from the underlying facts must be viewed in

the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 587 (1986); United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn

in [her] favor."  Anderson, 477 U.S. at 248; see also Bayer v. United States Dept. Of Treasury,

956 F. 2d 330, 333 (D.C. Cir. 1992).

In addition, Local Civil Rule 7(h) provides:

> Each motion for summary judgment shall be accompanied by a statement
> of material facts as to which the moving party contends there is no genuine
> issue, which shall include references to the parts of the record relied on to
> support the statement.  An opposition to such a motion shall be
> accompanied by a separate concise statement of genuine issues setting
> forth all material facts as to which it is contended there exists a genuine
> issue necessary to be litigated, which shall include references to the parts
> of the record relied on to support the statement . . . .  In determining a motion
> for summary judgment, the court may assume that facts identified by the

Scott v. District of Columbia, *et al.*                                                    10

> moving party in its statement of material facts are admitted, unless such a
> fact is controverted in the statement of genuine issues filed in opposition to
> the motion.

LCvR 7(h) (emphasis supplied).

The District of Columbia Circuit has held that "[i]f the party opposing the motion fails to

comply with this local rule, then 'the district court is under no obligation to sift through the

record' and should '[i]nstead . . . deem as admitted the moving party's facts that are

uncontroverted by the nonmoving party's Rule [LCvR 7(h)] statement.'" Securities and Exch.

Comm'n v. Banner Fund Int'l, 211 F. 3d 602, 616 (D.C. Cir. 2000) (citation omitted).  The

District of Columbia Circuit "[has] explained . . . that the 'the procedure contemplated by the

[local] rule . . . isolates the facts that the parties assert are material, distinguishes disputed from

undisputed facts, and identifies the pertinent parts of the record." Burke v. Gould, 286 F. 3d 513,

517 (D.D.C. 2002) (quoting Gardels v. Cent. Intelligence Agency, 637 F. 2d 770, 773 (D.C. Cir.

1980)).  This circuit has affirmed the grant of summary judgment where the nonmoving party

failed to cite any evidence in the record, and in the statement of genuine factual issues, "did not

set forth specific, material facts, but simply asserted, without citing evidence in the record, that

there was a disputed issue[.]"  Burke, 286 F. 3d at 518 (quoting Tarpley v. Greene, 684 F. 2d 1, 7

(D.C. Cir. 1982)).


    *B.  IDEA*

When an action is brought pursuant to the IDEA, the court is required to review the

administrative record, hear additional evidence presented at the request of the parties, and based

"on the preponderance of evidence shall grant such relief as the court determines is appropriate."

Scott v. District of Columbia, *et al.*                                                    11

Razzaghi v. District of Columbia, No. 03-1619, 2005 U.S. Dist. LEXIS 36771, *10-11 (D.D.C. September 28, 2005) (citing 20 U.S.C. § 1415(i)(2)(C)).  "When no additional evidence is introduced in a civil suit seeking review of [a Hearing Officer Determination], a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record."  District of Columbia v. Ramirez, 377 F. Supp. 2d 63, 67 (D.D.C. 2005) (citing 20 U.S.C.§ 1415(i)(2)(B)).  District courts are to give the hearing officer's decision "due weight." See Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982) (holding that this provision "carries with it the implied requirement that due weight shall be given to" the administrative proceedings). However, the standard is "less deferential than that applied under the traditional substantial evidence test used in ordinary administrative review cases."  Scorah v. District of Columbia, 322 F. Supp. 2d 12, 16 (D.D.C. 2004).

## V.  DISCUSSION

   *A.  The Hearing Officer's Determination that DCPS complied with the requirements of the IDEA by failing to test J.B. is not supported by a preponderance of the evidence.*

   Plaintiff challenges the Hearing Officer's findings that the record established that DCPS did not fail to comply with Plaintiff's requests to have J.B. evaluated, and that she agreed to the implementation of  "alternative strategies" in lieu of testing.  Plaintiff alleges, and Defendants do not dispute, that on several occasions between June, 2001 and June, 2003, Plaintiff requested that J.B. be evaluated to determine whether he required special education services.  Plaintiff's Statement of Material Facts Not in Dispute, ¶ 5.  However, Defendants maintain that the Hearing Officer correctly found that Plaintiff  "[appeared] to have wanted the student tested, but rather

Scott v. District of Columbia, *et al.*                                          12

than tell DCPS of her desire, she went along with the alternative strategies" suggested at the TAT

meetings.  Defendants' Reply at 1 (<u>citing</u> Administrative Record at 4.).  Additionally, Defendants

maintain that the administrative record does not include any documents which show that Plaintiff

submitted any written requests that J.B. be evaluated.  Defendants' Reply at 4.

The Court first examines the regulatory framework governing "initial evaluations" of a

child suspected of having a disability to determine whether DCPS was required under federal or

local regulations to conduct such an evaluation.  The duty to conduct an initial evaluation arises

from the "child find" provisions of the Act, 20 U.S.C. § 1412(a)(3)(A), and also is set forth in

Section 1414 of the IDEA.

The DCPS policies and procedures governing "initial evaluations" are set forth in Title 5,

Section 30 of  the District of Columbia Municipal Regulations.  Under these regulations, a

student's parent may make a referral to DCPS to commence the initial evaluation process.  The

referral must be in writing to the building administrator of the school that the student attends or is

eligible to attend, and must state the basis for the belief that the child has a disability.  <u>See</u> 5 D.C.

Mun. Regs. § 3004.1(a)-(b).

Defendants offer no authority for their contention that a parent must request a evaluation

of a child who may have a disability in writing before DCPS is obligated to conduct the

evaluation.  The court assumes that Defendants rely on the District of Columbia Municipal

Regulations.  The court is mindful that another judge of this court held that "the regulations make

clear that the [written] referral to the neighborhood school is the triggering event for the initial

evaluation."  <u>Kruvant v. District of Columbia</u>, No. 03-1402, 2005 U.S. Dist. LEXIS 34045, *34

Scott v. District of Columbia, *et al.*                                                            13

(D.D.C. August 10, 2005).  However, since that time, the District of Columbia Circuit,

commenting on IDEA's "child find" provision, held that:

> Under [IDEA], states and territories, including the District of Columbia, that
> receive federal educational assistance must establish "policies and procedures to
> ensure," among other things, that "free appropriate public education, " or "FAPE,"
> is available to disabled children.  School districts may not ignore disabled
> students' needs, **nor may they await parental demands** before providing special
> instruction.  Instead, school systems must ensure that "[a]ll children with
> disabilities residing in the State . . . regardless of the severity of their disabilities,
> and who are in need of special education and related services, are **identified,
> located, and evaluated**."

Reid v. District of Columbia, 401 F.3d 516, 519 (D.C. Cir. 2005) (internal citations omitted)

(emphasis supplied);  Branham v. District of Columbia, 427 F.3d 7, 8 (D.C. Cir. 2005) .

The Circuit's holdings require DCPS to identify and evaluate students in need of special

education services and related services, whether or not parents have made any request, written or

oral.  The undersigned finds that Defendants' contention that DCPS was not required to evaluate

J.B. because his mother did not submit a written request is therefore without merit.

Moreover, the preponderance of the evidence in the record indicates that as early as

September, 2001, Defendants were aware that J.B. had been diagnosed as suffering from ADHD.

Administrative Record at 4.  J.B.'s third grade teacher, Ms. Frida, testified at the hearing that

"[J.B.'s] behavior was such that the first day of school at the end of the day I spoke with his mom

. . . [a]nd at that -- After school, that's when she said to me, 'Well, he is diagnosed ADHD, and

he is on medication.' . . . And during the course of the year, most of his behavior was indicative

of ADHD."  Transcript at 40.

Additionally, Mr. Braxton, Eaton's special education coordinator, and Ms. Frida, were

both aware that J.B.'s academic progress was an issue, and that his difficulties at Eaton were not

Scott v. District of Columbia, *et al.*                                                                          14

merely behavioral.  In response to a question regarding the reason that the June, 2002 TAT

meeting was called, Mr Braxton testified that "[t]he concern that the school has was that he was

having some difficulty staying on task, staying focused in the classroom, and completing

assignments."  Transcript at 22.  Similarly, Ms. Frida testified that J.B.'s behavior affected his

academics during the 2001-02 school year.  See Transcript at 40.

      For these reasons, the undersigned finds that the need for evaluations of J.B. to determine

whether he was entitled to special education and related services was evident throughout the

2001-02 school year.  In addition, Plaintiff, throughout the year, requested that her son be

evaluated.  The obvious need for evaluations and the parental request for them notwithstanding,

no evaluations were conducted.

      The Hearing Officer appears to have relied upon the assumption that J.B.'s problems at

school were behavioral as a basis of his determination that DCPS did not violate IDEA by

declining to test J.B. during the 2001-02 and 2002-03 school years.  Administrative Record at 4-

5.  However, when a student's behavioral problems affects his ability to learn, IDEA still applies.

In Thomas v. District of Columbia, 407 F. Supp. 2d 102, 105 (D.D.C. 2005), the court held that

"[i]n the case of a child whose behavior impedes his or her learning or that of others, the IEP

team shall consider 'when appropriate, strategies, including positive behavioral interventions,

strategies, and supports to address that behavior.'"  Id. (citing 20 U.S.C. § 1414(d)(3)(B)(i)).

Thus, even where a student presents issues which may be characterized as "behavioral," IDEA

requires the intervention of an IEP team if the student -- after the appropriate evaluations -- is

found eligible for special education or related services.

Scott v. District of Columbia, *et al.*                                                    15

Defendants maintain that the Hearing Officer's finding that the implementation of the "alternative strategies" suggested at the TAT meetings relieved DCPS of its duty to evaluate J.B. for "special education services" is supported by a preponderance of evidence in the record. However, neither the transcript nor any other evidence in the record suggest that Plaintiff agreed to the "alternative strategies" in lieu of appropriate evaluations of J.B. Moreover, no provision of the IDEA supports Defendants' contention that a parent's acceptance of the use of "alternative strategies" relieves a school district of the obligation to comply with the "child find" provisions of the Act.

In sum, the undersigned finds that the Hearing Officer erred in finding that DCPS had not denied J.B. a FAPE, and had not violated IDEA's provisions regarding the evaluation of students who may require special education or related services. The preponderance of the evidence indicates that J.B.'s teachers and the Eaton staff were aware that J.B. had been diagnosed with ADHD at the time of his enrollment at Eaton, and that J.B. was unable to stay on task academically and complete his assignments. The court finds that this evidence triggered the "child find" provisions of Section 1412(a)(3)(A) of the Act, and that DCPS was required to evaluate J.B. to determine whether he required special education and related services.

*B. The Hearing Officer's finding that DCPS did not deny J.B. a FAPE by failing to develop an IEP for J.B is not supported by a preponderance of evidence in the record.*

Plaintiff alleges that pursuant to 20 U.S.C. § 1414(d)(2), DCPS was required to develop an IEP for both the 2001-02 and 2002-03 school years for J.B., and since DCPS did not do so, J.B. was denied a FAPE. Defendants do not dispute that an IEP was not developed for J.B., but

Scott v. District of Columbia, *et al.*                                                    16

maintain that the Hearing Officer's finding that J.B. was not denied a FAPE is supported by a

preponderance of evidence in the record.

In Bd. of Educ. of Hendrick Hudson Central School Dist., Westchester County v.

Rowley, 458 U.S. 176 (1982), the Supreme Court defined FAPE:

> The term 'free appropriate public education' means **special education** and
> **related services** which (A) have been provided at public expense, under public
> supervision and direction, and without charge, (B) meet the standards of the State
> educational agency, (C) include an appropriate preschool, elementary, or
> secondary school education in the State involved, and (D) are provided in
> conformity with the individualized education program required under section
> 1414(a)(5) of this title.

Rowley, 458 U.S. at 188 (citation and internal quotations omitted).  The Court further held that

FAPE "consists of educational instruction specially designed to meet the unique needs of the

handicapped child, supported by such services as are necessary to permit the child 'to benefit'

from the instruction." Id. at 188-189.

The development of an IEP is governed by Section 1414(d)(2) of the Act, which provides

that "[a]t the beginning of each school year, each local educational agency . . . shall have in

effect, for each child with a disability in the agency's jurisdiction, an individualized education

program[.]" 20 U.S.C. § 1414(d)(2).  Additionally, the District of Columbia Circuit has held

that:

> [S]chool systems must ensure that "[a]ll children with disabilities, and who are in
> need of special education and related services, are identified, located, and
> evaluated."  Once such children are identified, a "team" including the child's
> parents and select teachers, as well as a representative of the local educational
> agency with knowledge about the school's resources and curriculum, develops an
> "individualized education program," or "IEP," for the child.  Pursuant to the
> Supreme Court's decision in Bd. of Educ. of the Hendrick Hudson Central School
> District, Westchester County v. Rowley, 458 U.S. 176 (1982), the IEP must, at a

Scott v. District of Columbia, *et al.*                                                      17

> minimum, "provid[e] personalized instruction with sufficient support services to
> permit the child to benefit educationally from that instruction."

Reid, 401 F.3d at 518-519 (internal citations omitted).

Thus, an IEP is a means by which school systems ensure that students with disabilities are

provided a FAPE. While the Circuit has not addressed whether the failure to develop an IEP

constitutes a denial of FAPE, another judge of this court so held:

> [T]he failure to provide an IEP . . . constitutes the denial of a free appropriate
> public education as required by the IDEA.

Blackman v. District of Columbia, 277 F. Supp. 2d 71, 79 (D.D.C. 2003) (citing Walker v.

District of Columbia, 157 F. Supp. 2d 31, 32 (D.D.C. 2001)).

Defendants do not dispute that J.B. suffered from ADHD and that there was not an IEP in

effect for him during the 2001-02 and 2002-03 school years. See Defendants' Memorandum in

Support of Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Motion for

Summary Judgment. Additionally, the undersigned has already found that DCPS was required to

"identify, locate, and evaluate" J.B. as a student who may have been "in need of special

education and related services." Accordingly, DCPS was required to "develop an individualized

education program" for J.B., which provided him with "personalized instruction with sufficient

support services to permit [J.B.] to benefit educationally from the instruction." The undersigned

finds that DCPS' failure to develop an IEP for J.B. constitutes the denial of a FAPE.

The Supreme Court, in Rowley, held that "[i]mplicit in the congressional purpose of

providing access to a "free appropriate public education" is the requirement that the education to

which access is provided be sufficient to confer some educational benefit upon the handicapped

child." Rowley, 458 U.S. at 200. The Court further held that a school district can meet its

Scott v. District of Columbia, *et al.*                                                         18

obligation to provide a FAPE by "providing personalized instruction with sufficient support

services to permit the child to benefit educationally from than instruction."  Rowley, 458 U.S. at

203.  The IDEA demands that school districts provide a student with disabilities with instruction

tailored to his individual needs and which simultaneously provides an educational benefit.  It is

undisputed that DCPS failed to do so.  Accordingly, the Hearing Officer's finding that J.B. was

not denied FAPE is not supported by a preponderance of evidence in the record.


## VI. CONCLUSION

Upon consideration of the motions, oppositions, replies and entire record herein, and for

the reasons set forth herein, the court finds that Plaintiff has shown that there is no genuine issue

as to any material fact, and that she is entitled to judgment as a matter of law.  The court further

finds that Defendants have failed to make this showing with respect to their motion.  Plaintiff's

Motion for Summary Judgment (Docket No. 31) therefore will be **GRANTED**, and Defendants'

Cross Motion for Summary Judgment (Docket No. 33) therefore will be **DENIED**, by an order

filed on this date.


March 31, 2006 _____                     /s/_____

                                                                                    DEBORAH A. ROBINSON
                                                                                    United States Magistrate Judge